## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

———————————————————————————————————————————————

Michael J. Nowicki,

           Plaintiff,

v.

          **Memorandum of Law and Order**
          Civil File No. 04-4974 (MJD/AJB)

Minnesota Laborers Health and
Welfare Fund,

           Defendant.

———————————————————————————————————————————————

Bernie M. Dusich, Sieben Polk LaVerdiere & Dusich, PA, Counsel for Plaintiff.

Amy L. Court, Corey J. Ayling, and Pamela Hodges Nissen, McGrann Shea
Anderson Carnival Straughn & Lamb, Chartered, Counsel for Defendant.

———————————————————————————————————————————————

## I.    INTRODUCTION

      This matter is before the Court on cross motions for summary judgment.

[Docket Nos. 18, 23.]  Oral arguments were heard on February 15, 2006.

## II.    FACTUAL BACKGROUND

      This case arises under the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  Plaintiff, Michael Nowicki, commenced the

above-entitled matter against his ERISA benefits plan administrator, Minnesota

Laborers Health and Welfare Fund ("the Fund"), after the Fund denied certain of

Nowicki's medical claims.  Nowicki seeks benefits under the plan at issue and a

declaratory judgment entitling him to future benefits.  The Fund seeks dismissal of

all claims and a award of attorneys' fees and costs.

### A.    Nowicki's Injury and Events Relating to Current Claims

Nowicki's claims stem from an injury received during a snowmobile

accident on April 30, 1999.  As a result of the accident, Nowicki's left leg was

amputated just below the knee.  At the time of the accident Nowicki was a

member of the Fund and sought medical coverage under its terms.

Nowicki signed a subrogation agreement, as was required by the Plan,

before he could receive any benefits.  The Fund paid medical claims totaling

$10,251.97, and weekly disability benefits totaling $2,600.00.  (Skoog Aff. ¶ 3.)

In 2002, Nowicki filed suit against the manufacturer of the snowmobile,

Bombardier, the manufacturer of the snowmobile track, Camoplast, and the

manufacturers of the snowmobile studs, W. Fast-Trac Industries and International

Engineering and Manufacturing, Inc. ("IEM").  Nowicki obtained a partial

settlement from Camoplast, W. Fast-Trac and IEM in the amount of $300,000.

The settlements expressly denied liability on the part of the defendants.  (Dusich

Aff. Ex. 2.)

The balance of the case was tried against Bombardier in an arbitration

hearing which Nowicki ultimately lost.  After deducting attorneys' fees, legal costs,

and subrogation claims, Nowicki was left with a net settlement of $117,985.57.

After the settlement and trial, Nowicki required new liners for his leg prosthesis.  The Fund denied these medical claims because Nowicki had made a third-party recovery from the three parties that settled.  Nowicki appealed the denial by written appeal dated January 2, 2004.  (Dusich Aff. Ex. 5.)  The initial denial letter cited Paragraph qq of the Summary Plan Amended through July 2002 ("2002 Plan") as justification for the denial.  (Dusich Aff. Ex. 6.)  Paragraph qq states that the plan does not cover "any loss, expense or charge arising out of or relating to an Injury, occurrence, condition or circumstance for which . . . (a) recovery subject to the Fund's right of subrogation or reimbursement rights have been received . . ."  (Id.)

Nowicki appealed the Fund's decision to the Board of Trustees.  The appeal was heard at the Trustee meeting on June 17, 2004.  A final decision letter denying the appeal was issued on June 17, 2004.  (Dusich Aff. Ex. 7.)  The letter stated that "the Fund's right to reimbursement arises if any recovery is made from a third party," and noted that its decision was based on "the Memorandum you submitted, your [attorney's] oral argument at the meeting, Mr. Nowicki's statements made there, and the administrative file in this matter, including your [Attorney's] appeal letter dated March 2, 2004 and Mr. Nowicki's subrogation agreement with the Fund dated June 9, 1999."  (Id.)

3

Nowicki brought this action seeking a determination that the Fund is responsible for current medical bills denied by the Fund and all future expenses relating to his 1999 accident.

**B.      Trust Agreement and Plan Language**

The Fund is a trust fund, and is governed by an Agreement and Declaration of Trust ("Trust Agreement").  The Trust Agreement was amended once during the relevant time period for this litigation with an effective date of January 1, 2002.

The Trust Agreement gives the Trustees the power and authority to establish a written plan of benefits, which sets forth the benefits to be provided from the Fund, the conditions of eligibility for such benefits, and the terms of payment.  (Scoog Aff. Ex. B at 9; Ex. C at 8.)  The Trustees also have the power to amend the Plan at any time.  (Id. Ex. B at 11; Ex. C at 9.)  Finally, the Trust Agreement provides that all rights of eligibility and benefits granted under the Plan shall be subject to the Trustee's power of amendment and that employees shall have no vested interest in such rights or benefits.  (Id.; Ex. B at 11-12; Ex. C at 9.)

In accordance with ERISA, the Trustees issued various Summary Plan Descriptions, with the relevant one effective from June 1, 1998 through June 30, 2002.  (Skoog Aff. ¶ 8.)  This document summarized the provisions of the 1994

Rules and Regulations as periodically updated by the Trustees.  (<u>Id.</u>)  A new

Summary Plan was issued effective July 1, 2002.  (<u>Id.</u> ¶ 9.)

Both versions of the Plan Documents provide that the Fund is administered

by the Trustees, and that the Plan Document, the Rules and Regulations, and the

Trust Agreement may be amended at the sole discretion of the Trustees.  (Skoog

Aff. Ex. E, at 4; Ex. F, at 4.)  The Plan Documents also provide that the Trustees

have sole discretion to determine whether a person is entitled to benefits and to

apply and interpret the terms of the Plan Documents and Trust Agreements.

(Skoog Aff. Ex. E at 3; Ex. F at 4.)

The 1998 Plan Document contains a future medical exclusion which

provides:

> The Plan does not cover:
>
> Any loss, expense, or charge (1) for which a third party is liable and (2) for which either (a) a recovery subject to the Fund's subrogation and reimbursement rights has been received (whether before or after the submission of or payment of claims by the Fund) or (b) the Fund deems it likely that a recovery will be received.

(<u>Id.</u> Ex. F at 52.)

The 2002 Summary Plan changed this language to the following:

> The Plan does not cover:
>
> Any loss, expense or charge arising out of or relating to an injury, occurrence, condition or circumstance for which either a (a) recovery subject to the Fund's right of subrogation or reimbursement rights has been received (whether before or after the submission of claims

to or payment of claims by the Fund) or (b) the Fund deems it likely that recovery will be received. At the discretion of the Trustees, losses, expenses or charges excluded by this section may be paid subject to the Fund's rights of subrogation and reimbursement. The amount of loss expense or charge excluded by this section will be the total of amounts that the Fund would otherwise pay (not the amount charged by the provider or claimed by the eligible person) up to the full amount of the recovery. This exclusion applies notwithstanding any allocation or apportionment that purports to characterize any recovery or part of a recovery as in any way not subject to the rights of subrogation or reimbursement, including but not limited to, any apportionment to a spouse for loss of consortium.

(Id. Ex. E at 51.)

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Id. at 323. "Summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case." Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997).

### B.    Standard of Review Under ERISA

ERISA provides that a plan participant may bring a suit to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of

6

the plan, or to clarify his rights to future benefits under the terms of the plan.  29

U.S.C. § 1132(a)(1)(B).  Generally, the appropriate standard of review on a denial

of benefits charge under ERISA is a de novo standard of review.  <u>Firestone Tire &</u>

<u>Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).  However, if the ERISA plan grants

the administrator the authority to determine eligibility for benefits or to construe

the terms of the plan, then the Court must review the determination under an

abuse of discretion standard.  <u>Id.</u> at 111.

The Eighth Circuit has variously defined an interpretation that would abuse

discretion as being "'extremely unreasonable,' . . . 'virtually' the same as arbitrary

and capricious, . . . and 'extraordinarily imprudent.'"  <u>Shell v. Amalgamated</u>

<u>Cotton & Garment</u>, 43 F.3d 364, 366 (8th Cir. 1994).

The 1998, 2002 and 2004 plans each contained language giving discretion

to the administrator.  While Plaintiff concedes that the 2002 and 2004 plans grant

the administrator discretion, he argues that the 1998 plan did not.  The 1998 plan

states that "the Trustees have discretion in determining whether a person is

entitled to benefits under the Plan."  (Skoog Aff. Ex. E at 3.)  The Trustees were

explicitly granted discretion under the 1998 Plan and an abuse of discretion

standard applies in this case.

**C.    Which Plan Governs Nowicki's Claims**

Because the Plan was amended, the Court must first determine which Plan

governs Nowicki's claims.  This distinction is important because under the 1998

Plan language Nowicki is entitled to coverage for the maintenance and upkeep of

his prosthetic.  However, if the amended 2002 Plan applies, Nowicki's claims may

be excluded based on third party recoveries.

Generally ERISA does not require vesting of welfare benefits.  Barker v.

Ceridian Corp., 122 F.3d 628, 632-33 (8th Cir. 1997).  Therefore, medical benefits

provided through welfare benefit plans need not automatically vest and an

employer may unilaterally modify or terminate medical benefits at any time

absent the employer's specific contractual agreement to the contrary.  Curtiss-

Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995).  Any promise to vest must

be written and incorporated into the ERISA plan itself.  Barker, 122 F.3d at 633.

Where a document is silent on the issue of vesting, it is presumed that the benefits

were not intended to vest.  See Hughes v. 3M Retiree Medical Plan, 134 F. Supp.

2d 1062, 1065 (D. Minn. 2001).  A plaintiff has the burden of proving that welfare

benefits have vested.  Howe v. Varity Corp., 896 F.2d 1107, 1109 (8th Cir. 1990).

Because an amendment to the plan may not operate retroactively if that

amendment deprives a beneficiary of a vested benefit, the Court must ascertain

whether the medical benefits here were vested under the 1998 plan.  See Barker,

122 F.3d at 634.

Nowicki proffers two reasons why his benefits vested under the 1998 Plan.

8

First, he asserts that the 1998 Plan is an injury plan and all expenses arising out of the covered injury are paid under the policy in effect at the time of the injury. Second, he argues that the upkeep and maintenance of his prosthetic should be considered one continuous procedure, vesting at the time he received his prosthetic.

### 1.    Injury v. Expense Policy

In general, coverage under a medical insurance policy or plan is triggered by one of two events.  If a policy insures against illness, coverage for all medical costs arising from a particular illness vests when the illness occurs.  10A Lee R. Russ & Thomas F. Segalla, Couch on Insurance, § 144.49 (3d. ed. 2005).  If a policy insures against expenses, coverage vests when the expenses are incurred and benefits may be altered even though the alteration is to the insured's detriment as to a loss that has already occurred.  Id.

The plain language of the Plan Documents indicate that the policy was an expense plan.  The language in the 1998 Plan Document states:

You and each of your Dependents are entitled to this benefit if, while covered, you incur Covered Charges.  This Benefit provides you with coverage for any Injury or Illness that is not employment related.

(Skoog Aff. Ex. D at 40) (emphasis added.)  Although the second sentence cited above does use the word "injury" it is not intended to set forth which coverage is provided.  It is the first sentence, employing the word "expenses" that sets forth

when a member receives benefits. Thus, upon a plain reading of the provision, the incurrence of "covered charges" is the triggering event giving rise to benefits eligibility.

Further, the heading of the section under which this citation occurs reads: "Comprehensive Medical <u>Expense</u> Benefit." (<u>Id.</u> Ex. D at 40) (emphasis added.) When interpreting ERISA plan documents, courts look to the law of trusts, "giving the words in that clause their ordinary meanings." <u>Barker</u>, 122 F.3d at 634. Reading the entire provision, including the heading, in a consistent manner reveals that the Fund was meant to be an expense policy.

Nowicki argues that even if this is an expense policy, his prosthetic should be considered one course of treatment, with his benefits relating to its maintenance vesting at the time he received the prosthesis.  Because benefits under the plan expressly vest when expenses occur, the Court is unable to conclude that the future maintenance of a prosthetic vests at any time before the expenses relating to upkeep arise.

To address this issue, other courts have devised two categories of treatments.  <u>See</u> <u>Wheeler v. Dynamic Engineering, Inc.</u>, 62 F.3d 634, 640 (4th Cir. 1995) (collecting cases).  The first category consists of treatments which are relatively short and well-defined with a fixed termination.  In those cases, courts have consistently found that coverage vests upon the initiation of the procedure.

10

See Id.  Examples include coverage for pregnancy, Butler v. Provident Life and Acc. Ins. Co., 617 F. Supp. 724, 729 (D.C. Miss. 1985); a specified course of treatment for cancer, Wheeler, 62 F.3d at 640; and the implantation and removal of temporary surgical screws, Atchley v. Travelers Ins. Co., 489 S.W.2d 836, 837 (Tenn. 1973).  The second category consists of "continuing" ailments and their treatments such as HIV/AIDS, Owens v. Storehouse, Inc., 984 F.2d 394, 398 (11th Cir. 1993); McGann v. H&H Music Co., 946 F.2d 401, 407-08 (5th Cir. 1991); diabetes, Butler, 617 F. Supp. at 729; and a continuing course of psychiatric treatment, Coonce v. Aetna Life Ins. Co., 777 F. Supp. 759, 765 (W.D. Mo. 1991). Those situations, the courts reason, involve treatments that "continue throughout an employee's lifetime and may well involve a variety of unforeseeable future procedures," making automatic vesting improper.  Wheeler, 62 F.3d at 640.

The Court finds the instant case belongs in the latter category of "continuing" treatments.  Nowicki's prosthetic will require maintenance throughout his lifetime.  The exact procedures, equipment, and medical care required is unascertainable.  Accordingly, the Court determines that the expenses did not vest at the time Nowicki was fitted with his prosthesis.

> **2.     Whether the Subrogation Agreement Vested the 1998 Plan**

Nowicki argues that because the Fund based its denial of his claims on the

1999 subrogation agreement which referenced the 1998 Plan, the 1998 Plan must govern his eligibility for benefits.

The Court does not agree for two reasons. First, the Court disagrees with Nowicki's premise that his claims were denied based solely on the subrogation agreement. Nowicki received two denial letters. The first letter explained that his claims were denied based on the exclusion contained in paragraph qq of the 2002 Plan. The second letter affirmed the Trustees' decision to deny benefits, stating "the Trustees considered the Memorandum you submitted, your oral argument at the meeting, Mr. Nowicki's statements made there, and the administrative file in this matter, including your appeal letter dated March 2, 2004 and Mr. Nowicki's subrogation agreement with the Fund dated June 9, 1999." (Dusich Aff. Ex. 7.) The Letter opined that "the Subrogation Agreement . . . [Nowicki] signed provides that the Fund's right to reimbursement arises if any recovery is made from a third party." (Id.)

Thus, Nowicki's claims were denied based on the entire administrative record, including the exclusion contained in the 2002 Plan and the subrogation agreement.

Second, even considering, as Nowicki suggests, the subrogation agreement as the sole reason for denial, the Trustees decision would still stand. Nowicki acknowledged in the subrogation agreement that the Fund was not

12

required to pay any claims "related to" Nowicki's claims against a third party.

(Dusich Aff. Ex. 1.)  Instead, he affirmed that if the Fund paid claims, then he

would have to reimburse the Fund.  (Id.)  No language in the subrogation

agreement granted Nowicki any right to have benefits paid by the Fund.  Medical

benefits provided through welfare benefit plans do not vest absent the employer's

specific contractual agreement to the contrary.  Curtiss-Wright Corp. v.

Schoonejongen, 514 U.S. 73, 78 (1995).  Since no express language in the

subrogation agreement stated that Nowicki's claims would be processed under the

1998 Plan terms, the Trustees did not abuse their discretion in determining that

the 1998 Plan did not apply.

### 3. Whether the Fund Abused Its Discretion in Denying Claims

Because the Court has determined that Nowicki's claims did not vest under

the 1998 agreement, the Plan in effect at the time when Nowicki submitted claims

governs.  The Court next considers whether the Fund abused its discretion in

denying Nowicki's claims under the 2002 Plan.

In determining whether an interpretation is a reasonable exercise of

discretion, the Court considers: (1) whether the interpretation is consistent with

the goals of the Plan; (2) whether the interpretation renders any language in the

Plan meaningless or internally inconsistent; (3) whether the interpretation

conflicts with the substantive or procedural requirements of the ERISA statute;
(4) whether they have interpreted the words at issue consistently; and (5)
whether their interpretation is contrary to the clear language of the plan.  <u>Finley</u>
<u>v. Special Agents Mut. Benefit Ass'n, Inc.</u>, 957 F.2d 617, 621 (8th Cir. 1992).  The
Eighth Circuit has suggested the most significant of these factors is whether the
decision is consistent with the language of the plan.  <u>Lickteig v. Bus. Men's</u>
<u>Assurance Co. of Am.</u>, 61 F.3d 579, 583 (8th Cir. 1995).

     Applying the factors set forth above, the Fund acted rationally and fairly in
determining that Nowicki's future medical expenses relating to the snowmobile
injury are not covered until the point at which they exceed the settlement
amount.  Paragraph qq of the 2002 Plan clearly excludes all claims "arising out of
or relating to an injury . . . for which either a (a) recovery subject to the Fund's
right of subrogation or reimbursement rights has been received (whether before
or after the submission of claims to or payment of claims by the Fund) or (b) the
Fund deems it likely that recovery will be received."  The Fund's reading of this
provision is internally consistent on its face, there is no evidence in the record to
the contrary, it does not contradict the ERISA statute in any way, and does not
appear to be in conflict with the intent of the plan.  Accordingly, the Court finds
that the Fund did not abuse its discretion when denying Nowicki's claims for the
upkeep and maintenance of his prosthesis.

Nowicki also asserts that based on an Eighth Circuit holding that a

subrogation right applies only to the amount paid before the date of the

settlement with third parties, his subrogation only applies to medical expenses

incurred before the settlement agreement. (Pl. Mem. Supp. Summ. J. at 17)

(citing <u>Shell</u>, 43 F.3d at 364.)  In this case, because the Court has determined that

the Trustees did not base their decision solely on the subrogation agreement, the

Court need not reach this issue.

### 4.    Attorneys' Fees

The decision whether to award attorneys' fees is within the Court's

discretion.  <u>Hogan v. Raytheon Co.</u>, 302 F.3d 854, 857 (8th Cir. 2002).  In

exercising this discretion, the Court considers five factors (1) the degree of the

opposing parties' culpability or bad faith; (2) the ability of the opposing parties to

satisfy the award of attorney's fees; (3) whether an award of attorney's fees

against the opposing parties could deter other persons acting under similar

circumstances; (4) whether the parties requesting attorneys fees sought to benefit

all participants and beneficiaries of an ERISA plan or to resolve a significant legal

question regarding ERISA itself; and (5) the relative merits of the parties'

positions.  <u>Lawrence v. Westerhaus</u>, 749 F.2d 494, 496 (8th Cir. 1984.)

The Court declines to award attorneys fees in this case.  There is no

evidence to indicate that Nowicki brought this claim in bad faith.  As an

15

individual, even considering the settlement he received, he does not appear to be in a position to pay additional attorneys' fees.  Further, the parties both presented legitimate arguments to the Court.  Thus, the Court finds that this is not the type of case which warrants an award of attorneys' fees and the Fund's request is denied.


Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:


1.     Plaintiff's Motion for Summary Judgment [Docket No. 18] is **DENIED;**

2.     Defendant's Motion for Summary Judgment [Docket No. 23] is **GRANTED IN PART AND DENIED IN PART;**

   a.     Motion for Summary Judgment is **GRANTED** as to all counts of the Complaint and the Complaint is dismissed with prejudice.

   b.     Motion for Attorneys' Fees is **DENIED.**


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: May 3, 2006                                s / Michael J. Davis
                                                  Judge Michael J. Davis
                                                  United States District Court


16